AO 91 (Rev. 5/85) Criminal Complaint

# UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF KENTUCKY

06 AUG 31 PM 3: 05

UNITED STATES OF AMERICA

V.

**MARSHALL PENCE**
Louisville, KY

## CRIMINAL COMPLAINT

CASE NUMBER: 3:06mg-298

I the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about June 22, 2006 in Jefferson County, in the Western District of Kentucky, MARSHALL PENCE, defendant herein, attempted to possess 500 grams or more of a mixture or substance containing cocaine with the intent to distribute in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B) and 846

I further state that I am a Special Agent with the Drug Enforcement Agency (DEA) and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:  ☑ YES  ☐ NO

X _____
Signature of Complainant

Sworn to before me and subscribed in my presence,

August 31, 2006
Date

AT    U.S. Courthouse
      Louisville, KY
      City and State

Judge James D. Moyer
Name and Title of Judicial Officer

James D. Moyer
Signature of Judicial Officer

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE, KY

AFFIDAVIT

1. Your affiant is a Special Agent of the U.S. Drug Enforcement Administration. He has been employed as an investigative and law enforcement officer of the United States since January of 2005. During that time, he has participated in several investigations involving the distribution of controlled substances. The following information has been obtained through personal observation and knowledge or was told to him by those individuals named within this affidavit.

2. On or between 05-28-2006 and 06-22-2006, a DEA confidential informant, hereafter referred to as CS1, engaged in conversation with Marshall PENCE regarding PENCE's future purchase of two (2) kilograms of powder cocaine. During conversations, PENCE stated that he was currently receiving a price of $19,000 per kilogram. PENCE stated that he would deal with CS1 if he/she were able to beat that price. In subsequent conversation, CS1 informed PENCE that he would be contacted by a colleague, hereafter referred to as CS2, when the cocaine shipment was to be delivered.

4. On 06-08-2006, CS2 placed a phone call to Marshall PENCE regarding the delivery of two kilograms of cocaine on 06-09-2006. CS2 stated to PENCE that he/she would be traveling from Indianapolis and would arrive in Louisville on 06-09-2006. PENCE stated that would be good, and that he would call and set everything up now. CS2 stated he/she would call once in Louisville.

5. On 06-09-2006, CS2 contacted PENCE and stated that he/she had just arrived and would like PENCE to meet him/her at the Target store behind Jefferson Mall. At approximately 12:45pm, PENCE contacted CS2 stating he was pulling into the lot. Surveillance observed PENCE park adjacent to CS2. PENCE exited his vehicle and approached CS2 on the driver's side. PENCE stated he would like CS2 to follow him to his residence, which was approximately 10 minutes away, where they could complete the transaction. PENCE stated he would like to show CS2 his house so he/she would know where to come the next time the CS2 delivered cocaine. PENCE stated that if CS2 came to his residence he/she would have plenty of time to relax and count the money. PENCE also stated there was a third party bringing the money and that he was simple middling the deal. PENCE stated "this is like a free play for me", in which he would make approximately $3,000. PENCE told CS2 that he wanted to be extra cautious because he was the "Indiana Barber Boy" and had too much to lose. CS2 told PENCE he/she had wasted too much time and that they could complete the transaction the next time CS2 was in town.

6. On 06-21-2006, CS2 placed a phone call to PENCE, regarding the future delivery of two kilograms of cocaine. CS2 stated he/she would be arriving in Louisville on 06-22-2006 and that he/she would be providing two kilograms of cocaine to PENCE at the request of CS1. PENCE stated that he would have to make some calls in order to get the money together for the cocaine. CS2 responded by telling PENCE that the two kilograms of cocaine were to be fronted and that

PENCE would have approximately 1 week in order to repay the debt. PENCE stated that CS2 should come to his home where they can complete the transaction in privacy. CS2 stated that he/she would prefer to complete the transaction in a public place. Subsequent to CS2's request, PENCE stated he would prefer to complete the deal somewhere in the west-end of Louisville so he could put the cocaine in "granny's" house.

7. On 06-22-2006, at approximately 10:30pm, CS2 contacted PENCE. PENCE stated he would prefer to complete the deal at a movie theater just down the street from his home. At approximately 1:05pm, CS2 contacted PENCE stating that he/she would like PENCE to meet him/her at the Lowe's Home Improvement Warehouse (LHIW) in approximately 15 minutes.

8. At approximately 1:15pm, upon the CS2's arrival, PENCE's vehicle was observed in the LHIW parking lot. Moments later, surveillance observed PENCE exit the LHIW carrying numerous plastic bags.

9. At approximately 1:18pm, CS2 walked from his/her vehicle carrying a duffle-bag containing two (2) simulated kilograms of cocaine to PENCE's vehicle. PENCE stated to CS2, "I appreciate it" and the price is still "eighteen and a nickel right", meaning $18,500 per kilogram. Subsequently, PENCE took possession of the duffle-bag containing the two simulated kilograms of cocaine in the parking lot of LHIW in Louisville, Kentucky in the Western District of Kentucky.

X _____
Brian D. Sanders
Special Agent, U.S. Drug Enforcement

Subscribed and sworn to me this 31st day of August, 2006.

_____
United States Magistrate Judge